MILLER PROPERTIES ET AL., APPELLANTS, *v.* OHIO CIVIL RIGHTS
COMM. ET. AL., APPELLEES.

(No. 72AP-150—Decided September 5, 1972.)

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown
& Newman,* for appellants.

*Mr. William J. Brown,* Attorney General, and *Mr. Rob-
ert H. Olsen, Jr.,* for appellee Ohio civil rights comm.

REILLY, J. This is an appeal from a decision and judgment entry by the Franklin County Common Pleas Court rendered April 21, 1972.

Appellants Miller Properties, Inc., and Stratford Homes, Inc., are real estate corporations involved in the development of large multi-dwelling apartment complexes. Stratford Homes, Inc., is the owner of the apartments specified in the complaint and amended complaint filed by James R. Marshall with the Ohio civil rights commission. Miller Properties, Inc., is the rental agent for Stratford Homes, Inc.

Mr. James Marshall, the complainant, filed an affidavit with the Ohio civil rights commission on June 13, 1967, alleging that Miller Properties, Inc., had unlawfully discriminated against him by refusing to rent him an apartment in one of its complexes. Subsequent to an investigation of the charges, a finding of probable cause, and the failing of a conciliation, the commission issued a formal complaint.

A public hearing was held February 20 and 28, 1968. The hearing examiner submitted his findings and recommendations to the commission, whereupon, the commission issued an order finding that appellants had engaged in unlawful discrimination, which required them to cease and desist as well as take specific affirmative action. Appellants appealed to the Common Pleas Court. The trial court, reflecting an exhaustive review of the record, found reliable, probative, and substantial evidence to support the commission's finding. It modified the commission's order without taking additional evidence.

We particularly note that both counsel have presented excellent briefs and oral arguments. The record reveals the following salient facts: Mr. and Mrs. James B. Marshall, on Friday afternoon, June 2, 1967, visited the rental office of Miller Properties, Inc. They looked over several vacant apartments. They were told that there were available apartments and that Miller Properties, Inc., would rent to them. The Marshalls completed an application for an apartment and issued a $50 check as a deposit. Later

the same day, Mr. Marshall requested, and the rental agent agreed, that the application be changed to another apartment. The rental agent told Mr. Marshall that a credit check would be made and the Marshalls indicated that they desired to move as soon as possible. The following morning, Saturday, June 3, 1967, an employee of appellant telephoned Mr. Marshall to inform him that the apartment he had chosen was subject to a prior oral application which had precedence over his written application.

The same Saturday afternoon, June 3, 1967, Mr. James M. Draper called at appellant's rental office. He selected the apartment which had been Mr. Marshall's first choice. His application was accepted despite the latter's prior written application. He moved into the apartment June 12, 1967. Nonetheless, Mr. Marshall returned to the complex and viewed three additional apartments. Again, there was an undisclosed prior application.

In any event, he made a third selection which was also unavailable. Mr. Marshall attempted to contact appellant's agent concerning the status of his application upon at least six separate occasions, and was informed that the agent was busy, out of town, or would call back. The calls were not returned.

There was some question concerning Mr. Marshall's credit reports, but appellant's agent stated: "I would have rejected it before I got the credit report in, sir."

This appears to be a case of first impression in Ohio. Therefore, we are primarily governed by the applicable provisions of the Code.

Appellants assert three assignments of error. The first is the following:

"The trial court erred in finding that the Commission's erroneous findings of fact are irrelevant."

The commission is essentially responsible for deciding the issues of fact. The trial court's function is to determine the proper legal standard of proof within R. C. Chapter 4112. The trial court reviewed the record and found that discrimination because of race must be a factor in appellants' treatment of complainant, and that the com-

mission's finding which included such a standard of discrimination as the *sole* basis of appellants' action was too strict. The trial court was correct in finding such a distinction largely irrelevant in this case, because if discrimination based on race was the *sole* factor involved, manifestly it was also *a* factor. The one concept is inclusive of the other. Moreover, the above facts noted from the record reveal that the trial court applied the proper standard in the case, and properly found that the commission's findings of fact were supported by reliable, probative and substantial evidence. Consequently, appellants' first assignment of error is overruled.

Appellants' second assignment of error is the following:

"The trial court erred in upholding the constitutionality of Chapter 4112, Revised Code, insofar as such statute and the regulations promulgated by the Ohio Civil Rights Commission combine investigative, prosecution and adjudicatory functions in a single agency."

Appellants cite *Tumey* v. *Ohio* (1927), 273 U. S. 510, to support their thesis. This case however, concerned a criminal trial, and the Supreme Court held that a defendant in a criminal trial is deprived of due process of law where his liberty or property depends upon the determination of a judge with a personal or pecuniary interest in reaching a decision against him in the case. This is quite different from the role of a neutral hearing examiner, whose only interest is a search for truth and justice. There are no facts noted which imply that the examiner denied any of the parties a fair hearing.

Professor Kenneth Culp Davis, in Administrative Law Text, section 13.02 (West Publishing Co. 1959), wrote as follows: "The case law, both federal and state, generally rejects the idea that the combination with judging of prosecuting or investigating functions is a denial of due process, although a few exceptions can be found." The record does not show this case as an exception. Indeed, if appellants' second assignment of error is meritorious, the entire Ohio administrative law fabric is torn asunder, which in-

cludes, among others, the insurance, workmen's compensation, liquor control, and state professional licensing boards.

Appellants' second assignment of error is overruled.

Appellants' third assignment of error reads as follows:

"The trial court erred, not only in affirming, but in increasing the sanctions and burdens of the Commission's order—

"(a) requiring appellants to prepare and distribute a written statement of nondiscriminatory policy to their employees and agents;

"(b) requiring appellants to offer in writing by registered mail to James B. Marshall his choice of housing accommodations owned, controlled or managed by appellants for his acceptance or refusal prior to offering the same for rent to others;

"(c) ordering the appellants to, within fourteen days, provide the Commission with a complete list of all buildings or structures located within Franklin County owned, managed or otherwise controlled by appellants;

"(d) ordering the appellants, within fourteen days, to post certain notices and to include certain logos in all advertising;

"(e) requiring appellants, within thirty days, to file with the Commission for each building, criteria and standards for processing applications for tenancy, verifying credit, maintenance of waiting lists;

"(f) requiring appellants, for a period of two years, to maintain records as to the number of persons by race who inquire in person about rental and the action taken thereon;

"(g) requiring appellants to report every three months for one year and at six month intervals for an additional year, the number of persons by race making inquiry, filling applications, approving applications, etc. for rentals;

"(h) requiring appellants, within thirty days, to file with the Commission a sworn statement affirming that the

appellants have fully and completely complied with and will fully and completely comply with the Court's order.''

This assignment of error requires a particularly careful review of the applicable statutes. The Supreme Court recently summarized the application of basic rules of statutory interpretation in *Crowl* v. *DeLuca* (1972), 29 Ohio St. 2d 53, at 58, as follows:

"In *Prosen* v. *Duffy* (1949), 152 Ohio St. 139, this court held, in the first paragraph of the syllabus:

" 'A statute should be given that construction, unless such is prohibited by the letter of the statute, which will accord with common sense and reason and not result in absurdity or great inconvenience. (Paragraph one of the syllabus in *Moore* v. *Given,* 39 Ohio St., 661, approved and followed.)'

"The second paragraph of the syllabus in *State, ex rel. Haines,* v. *Rhodes* (1958), 168 Ohio St. 165 reads:

" 'The General Assembly is presumed not to intend any ridiculous or absurd results from the operation of a statute which it enacts, and, if reasonably possible to do so, statutes must be construed so as to prevent such results.'

"By the enactment of R. C. 1.49, effective January 3, 1972, the General Assembly itself has acknowledged certain basic rules of statutory construction, the statute providing:

" 'If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

" '(A) The object sought to be attained * * *.' ''

The statutory authority of the commission and court is different; hence, each is considered separately. The commission's authority is included in pertinent part in R. C. 4112.05:

"(G) If upon all the reliable, probative, and substantial evidence the commission determines that the respondent has engaged in, or is engaging in, any unlawful discriminatory practice, whether against the complainant or others, the commission shall state its findings of fact and

conclusions of law, and shall issue and, subject to the provisions of Chapter 119. of the Revised Code, cause to be served on such respondent an order *requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such further affirmative or other action as will effectuate* the purposes of sections 4112.01 to 4112.-08, inclusive, of the Revised Code, including, but not limited to, hiring, reinstatement, or upgrading of employees with, or without, back pay, admission or restoration to union membership, *including a requirement for reports of the manner of compliance. * * *"* (Emphasis added.)

The trial court's jurisdiction is in R. C. 4112.06 (B) (Judicial Review). That section reads, in part, as follows:

"Such proceedings shall be initiated by the filing of a petition in court as provided in division (A) of this section and the service of a copy of the said petition upon the commission and upon all parties who appeared before the commission. Thereupon the commission shall file with the court a transcript of the record upon the hearing before it. The transcript shall include all proceedings in the case, including all evidence and proffers of evidence. The court shall thereupon have jurisdiction of the proceeding and of the questions determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper and to make and enter, upon the record and such *additional evidence as the court has admitted,* an order enforcing, *modifying* and enforcing as so modified, or setting aside in whole or part, the order of the commission. * * *" (Emphasis added.)

The commission in the plain language of the statute has power to *effectuate* the purposes of the Code, *including* a *requirement for reports of the manner of compliance.* This in fact is what the commission did, by its order. The statute grants such power. The commission applied it. Consequently, within the framework of the Code, the order is valid.

The judicial review section (4112.06) involves a somewhat different approach. The term *modifying* in the statute grants the court power to alter or adapt the commission's

order. The language of the statute, however, moderates the trial court's jurisdiction. It has jurisdiction of the "proceeding and the questions determined therein * * * *and such additional evidence as the court has admitted, an order* enforcing, *modifying* and enforcing as so modified * * *." Therefore, we find that the trial court, *unless it takes additional evidence,* is empowered to review the commission's order and determine whether it is based upon reliable, probative and substantive evidence. The issue turns upon the record before the trial court. If he admits *additional evidence* he then may modify the order.

There was not additional evidence taken in this case; hence, the trial court was bound by the record before the commission. Not having received any additional evidence, the trial court enlarged the order of the commission without supportive facts which indicate a need for requirements beyond those imposed by the commission's order. For that reason, appellants' third assignment of error is well taken and is sustained.

The trial court applied the correct test in finding the order based upon reliable, probative and substantive evidence. His jurisdiction, however, was limited in this case to the commission's order. Therefore, for the foregoing reasons, the judgment of the trial court is affirmed in part and modified in part.

*Judgment affirmed in part and modified in part.*

TROOP, P. J., and STRAUSBAUGH, J., concur.