Board of Edn. of the Lordstown Local School District, Appellant, *v.* Ohio Civil Rights Comm. et al., Appellees.

---

(No. 80-520—Decided May 27, 1981.)

Messrs. Squire, Sanders & Dempsey, Mr. John T. Meredith and Ms. Maria J. Codinach, for appellant.

Mr. William J. Brown, attorney general, and Mr. Donald W. Conley, for appellee Civil Rights Commission.

Green, Schiavoni, Murphy, Haines & Sgambati Co., L.P.A., Mr. Dennis Haines and Ms. Patricia S. Roberts, for appellees Pavelko and Platt.

DONOFRIO, J.   Appellant's proposition of law No. 1 maintains that the claims are extinguished by the one-year statute of limitation, and that the amended statute of limitation cannot be applied retroactively to revive them.

Appellant's proposition of law No. 2 states that the statute of limitation for filing a complaint begins to run on the date the teachers were served with written notice of nonrenewal and not on the date on which the contract expires or the teacher is terminated.

R. C. 4112.05(B), as it existed in 1975, required the appellee commission to issue a complaint within one year after the alleged discriminatory practice occurred. This provision was amended in July 1976, to extend the time period to two years. The instant complaint was issued on December 14, 1976. If the final discriminatory act is found to have occurred in April 1975, when appellant informed appellees of their contract nonrenewals, the time period would have lapsed before the 1976 amendment and appellees' claims would be barred. However, if the final discriminatory act did not occur until August 31, 1975, when the teaching contracts expired, the charges would still have been pending when the 1976 amendment extended the time period, and the issuance of a complaint in December 1976, would be timely.

In support of its contentions, appellant cites the case of Delaware State College v. Ricks (1980), _____ U.S. _____, 66 L. Ed. 2d 431. The plaintiff in Ricks, a nontenured college professor, claimed that the defendant college had discriminated against him on the basis of race denying him tenure, issuing him a one-year contract, and notifying him of its intent to terminate his employment at the expiration

of this one-year contract. The plaintiff filed suit under Title VII of the Civil Rights Act of 1964, Sections 2000e *et seq.*, Title 42, U. S. Code, and the Civil Rights Acts of 1866 and 1870, Section 1981, Title 42, U. S. Code. The United States Supreme Court held that the limitation period commenced to run when the tenure decision was made and Ricks was notified.

*Ricks* is distinguishable from the instant case. Although it appears to have similarities, the discriminatory act in *Ricks* was the denial of tenure; that denial occurred and was accomplished before the notice was given. The discriminatory act in the instant case was a nonrenewal of appellees' teaching contracts based on sexual discrimination.

In *Egelston* v. *State University College at Geneseo* (C.A. 2, 1976), 535 F. 2d 752, an assistant professor alleged that her discharge had been motivated by her sex. The issue determined was whether the dismissal of the complaint as time barred was proper.

The United States Court of Appeals stated as follows:

"Dr. Egelston's primary grievance, of course, is rooted in her discharge. Judge Burke apparently assumed that, as to this element of the complaint, the statute's time limit was triggered when Dr. Egelston was notified in May 1972 that her contract would not be renewed. We do not agree. Appellant's discharge was consummated only when she left the university— or, possibly, when a replacement was hired. See *Gates* v. *Georgia-Pacific Corp.*, 492 F. 2d 292, 294-95 (9th Cir. 1975); *Johnson* v. *University of Pittsburgh*, 359 F. Supp. 1002, 1007 (W.D. Pa. 1973)." *Id.* at 755.

"There is an additional factor equally vital to the resolution of this case. Title VII is rife with procedural requirements which are sufficiently labyrinthine to baffle the most experienced lawyer, yet its enforcement mechanisms are usually triggered by laymen. Were we to interpret the statute's procedural prerequisites stringently, the ultimate result would be to shield illegal discrimination from the reach of the Act. Prior decisions, both of the Supreme Court and of this Circuit have, for this reason, taken a flexible stance in interpreting Title VII's procedural provisions. We follow this realistic approach today." *Id.* at 754-755.

We have held in *State, ex rel. Local Union 377,* v. *Youngstown* (1977), 50 Ohio St. 2d 200, at 203-204, that:

"Normally, a cause of action does not accrue until such time as the infringement of a right arises. It is at this point that the time within which a cause of action is to be commenced begins to run. The time runs forward from that date, not in the opposite direction, and thus when one's conduct is not presently injurious a statute of limitations begins to run against an action for consequential injuries resulting from such act only from the time that actual damage ensues."

*Ohio Civil Rights Commission* v. *Lysyj* (1974), 38 Ohio St. 2d 217, and R. C. 4112.08 indicate both a legislative and judicial intent that the July 23, 1976, amendment to R. C. 4112.05(B), be applied so as to extend the limitations period for a pre-existing cause of action. R. C. 4112.08 states as follows:

"The provisions of sections 4112.01 to 4112.08 of the Revised Code, shall be construed liberally for the accomplishment of the purposes thereof and any law inconsistent with any provision hereof shall not apply."

In *Lysyj,* at page 220, this court states:

"***courts, upon review, are to construe***[the Ohio laws against discrimination] liberally in order to effectuate the legislative purpose and fundamental policy implicit in their enactment, and to assure that the rights granted by the statutes are not defeated by overly restrictive interpretation."

The appellant board of education, asserting that a teacher's employment is terminated on notice of intention not to renew the existing teaching contract, cites in support *State, ex rel. Curry,* v. *Bd. of Edn.* (1978), 54 Ohio St. 2d 67; *State, ex rel. Hura,* v. *Bd. of Edn.* (1977), 51 Ohio St. 2d 19; *Justus* v. *Brown* (1975), 42 Ohio St. 2d 53; and *DeLong* v. *Bd. of Edn.* (1973), 36 Ohio St. 2d 62. The appellant's reliance thereon is misplaced, since none of the foregoing cases stands for the proposition urged by appellant that employment terminates on notice of intention not to re-employ.

We conclude that the final discriminatory act occurred on August 31, 1975, when the teaching contracts expired and the appellees' employment terminated, and that the claims of appellees were still pending on the date of the amendment of

R. C. 4112.05(B) and were thereafter governed by the statute extending the period for issuance of a complaint to two years and were, therefore, not barred.

Appellant's propositions of law Nos. 3, 4 and 5 are that the appellee commission did not provide reasons for its disapproval of its hearing examiner's recommendation, that sex discrimination was not the cause of the contract nonrenewals, and that the commission's decision is unsupported by reliable, probative and substantial evidence.

The appellee commission did include in its record of the proceedings the Attorney General's objections to the hearing examiner's report. These objections basically assert that the examiner used an incorrect standard of proof in determining whether appellant discriminated against appellees because of their pregnancies. The Attorney General contended that appellees need only establish that sexual bias was a causative factor to make out a prima facie case, and that the examiner erred in requiring them to show that sex was the sole factor. The commission accepted this contention in its conclusions of law.* While the commission could have been more explicit in stating its reasons for disapproval of the examiner's report, it appears quite evident that the commission accepted the Attorney General's objections.

In addition, the commission's findings of fact provide reliable, substantial and probative evidence of sex discrimination. The substance of the findings of fact was that both appellees were regarded as good classroom teachers. They were told by Superintendent James that the nonrenewal should be no bar to employment in other schools or at Lordstown at another time. Board of education members testified as to their severe misgivings regarding teachers who taught while raising a family. Board member Gifford stated in an offhand conversation that "pregnancy" was the reason for the two teachers' nonrenewal. One year later, he tried to retract this

---

* The commission's conclusion of law No. 3 reads as follows:

"Reliable, probative and substantial evidence on the record in this matter establishes that Ms. Pavelko and Ms. Platt's sex was a factor in the nonrenewal of their teaching contracts and employment termination by respondent.***See, e.g., *Miller Properties, Inc.,* v. *Ohio Civil Rights Commission,* 34 Ohio App. 2d 113 (Franklin Cty. 1972)."

statement. Board member Gallatin was outspoken that teachers should decide whether they want to "teach school or have babies."

The board of education's argument for the nonrenewal was that the teachers did not get along with Principal Cicciarello. The major complaints by the teachers against Cicciarello were made in 1972 and 1973. However, no terminations were made in those years. If appellees had been on probation in the 1974-75 school year they were not informed of that fact. The board members were unable to remember anything adverse in the evaluations of these teachers.

Based on the above facts, the commission stated that "sex was a factor in the nonrenewal." Therefore, there was before the commission sufficient reliable, probative and substantial evidence of sex discrimination.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

P. BROWN, SWEENEY, LOCHER and C. BROWN, JJ., concur.

CELEBREZZE, C. J., and KRUPANSKY, J., dissent.

KRUPANSKY, J., of the Eighth Appellate District, sitting for W. BROWN, J.

DONOFRIO, J., of the Seventh Appellate District, sitting for HOLMES, J.