CINCINNATI METROPOLITAN HOUSING AUTHORITY, APPELLEE, *v.* STATE
EMPLOYMENT RELATIONS BOARD ET AL., APPELLANTS.

[Cite as Cincinnati Metro. Hous. Auth. *v.* State Emp. Relations Bd.
(1990), 53 Ohio St. 3d 221.]

(Nos. 89-558 and 89-560—Submitted March 27, 1990—Decided August 29, 1990.)

*Dinsmore & Shohl, Michael W. Hawkins, Jeffrey S. Shoskin* and *Robert D. Hudson,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Robert E. Ashton,* for appellant State Employment Relations Board.

*Kircher & Phalen, Thomas J. Kircher* and *Peter M. Fox,* for appellant Greater Cincinnati Building & Construction Trades Council.

*Sandra Mendel Furman* and *Ronald H. Janetzke,* urging reversal for *amicus curiae,* Ohio Council 8, American Federation of State, County and Municipal Employees, AFL-CIO.

*Schottenstein, Zox & Dunn* and *Felix C. Wade,* urging affirmance for *amicus curiae,* Ohio Housing Authority Conference.

DONOFRIO, J. Appellant BTC asserts five propositions of law, which are also encompassed in appellant SERB's seven propositions of law, addressed hereafter.

We find that the appeals herein have merit and accordingly reverse the judgment of the court of appeals and reinstate the judgment of the common pleas court for the following reasons.

The court of appeals concluded that CMHA was not subject to the Public Employees' Collective Bargaining Act because its funding was derived, in part, from federal funds. Accordingly, it was the view of the appellate court that such reliance on federal funding undermined any independence that CMHA would have to collectively bargain with its employees. Appellant SERB's first four propositions of law argue in favor of its jurisdiction. They raise the following issues: Is a metropolitan housing authority a "public employer," as defined in the Act; and, if a metropolitan housing authority is a "public employer" as defined in the Act, is there anything in federal law, HUD regulations, CMHA's operations, or R.C. Chapter 4117 that prevents CMHA from engaging in collective bargaining pursuant to R.C. Chapter 4117?

I

We conclude that CMHA is a public employer under R.C. Chapter 4117. R.C. 4117.01(B) defines "public employer" as follows: " *'Public employer' means* the state or *any political subdivision of the state located entirely within the state including, without limitation,* any municipal corporation with a population of at least five thousand according to the most recent federal decennial census, county, township with a population of at least five thousand in the unincorporated area of the township according to the most recent federal decennial census, school district, state institution of higher learning, *any public or special district, any state* agency, *authority,*

commission or board, or *other branch of public employment.*" (Emphasis added.)

Both SERB and the trial court below concluded that CMHA is a "public employer" as defined in R.C. 4117.01(B). In *Lorain City Bd. of Edn.* v. *State Emp. Relations Bd.* (1988), 40 Ohio St. 3d 257, 533 N.E. 2d 264, this court held that "[c]ourts must afford due deference to the State Employment Relations Board's interpretation of R.C. Chapter 4117." *Id.* at paragraph two of the syllabus. Regarding the role of the appellate court in reviewing a SERB order on appeal, this court stated: "The fact that the court of appeals * * * might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court * * *." *Id.* at 261, 533 N.E. 2d at 267.

R.C. 4117.22 provides: "Chapter 4117 * * * shall be construed liberally for the accomplishment of the purpose of promoting orderly and constructive relationships between * * * public employers and their employees."

R.C. Chapter 4117 sets forth firmly defined legal guidelines that minimize the possibility of public-sector labor disputes and provides for the orderly resolution of any disputes. This law brings stability and clarity to an area where there had been none and will facilitate the determination of the rights and obligations of government employees and employers, and give them more time to provide safety, education, sanitation, and other important services. *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44,* v. *State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 5, 22 OBR 1, 4, 488 N.E. 2d 181, 185.

By defining a "public employer" as

the state or its political subdivisions *"including without limitation * * * any * * * branch of public employment"* (emphasis added) in R.C. 4117.01(B), the General Assembly clearly intended to include within such definition any state-created public body such as CMHA.

CMHA was created and empowered to carry out its functions pursuant to an Act of the General Assembly. See R.C. Chapter 3735. CMHA's governing board is appointed by local government officials in the local governmental jurisdictions in which CMHA operates. R.C. 3735.27 (B). Further, a metropolitan housing authority is defined as "a body corporate and politic." R.C. 3735.31.

The General Assembly has defined "political subdivision" to mean "* * * a municipal corporation, township, county, school district, *or other body corporate and politic* responsible for governmental activities in a geographic area smaller than that of the state." (Emphasis added.) R.C. 2744.01(F).

Moreover, this court has held that a "body corporate and politic" is not a private corporation, but a "body politic and a public corporation." *Kinsey* v. *Bower* (1946), 147 Ohio St. 66, 77, 33 O.O. 250, 255, 68 N.E. 2d 317, 323.

We find that CMHA is a state-created public body and has the status of a public employer.

## II

Having found that CMHA is a "public employer," we come now to the question of whether the operation of federal law or regulations of HUD would prevent CMHA from engaging in collective bargaining, pursuant to R.C. Chapter 4117. The appellants argue that a metropolitan housing authority, though its operation is subject to federal regulations, is not precluded from engaging in collective bargaining, pursuant to R.C. Chapter 4117. They argue that the Supremacy Clause of Article VI of the United States Constitution does not preempt the application of R.C. Chapter 4117 to CMHA's collective bargaining relationships. We agree.

Appellee argues that preemption applies because compliance with state law would thwart the accomplishment of congressional goals and policies. Appellee's argument is based upon the generalized notion that collective bargaining would conflict with or thwart what it contends is HUD's pervasive control of CMHA.

A state statute is invalid under the Supremacy Clause when Congress has acted on the subject matter of the state statute so as to preempt state involvement or regulation. The Supremacy Clause does not preempt application of R.C. Chapter 4117 to CMHA's collective bargaining relationships. Nothing in the United States Housing Act of 1937, Section 1437 *et seq.,* Title 42, U.S. Code, or HUD's regulations indicates congressional intent to preempt that application. To the contrary, the relevant federal statutes and regulations explicitly permit collective bargaining by local housing authorities pursuant to state public-sector collective bargaining laws. Moreover, when the subject matter of the state law is within the historical police powers of the state, it is presumed that the state law was not intended to be superseded by federal regulation, unless preemption is the " 'clear and manifest purpose' " of Congress. *Puerto Rico Dept. of Consumer Affairs* v. *Isla Petroleum Corp.* (1988), 485 U.S. 495, 503.

HUD has explicitly stated that collective bargaining between local public housing authorities such as CMHA and their employees is a matter reserved to the states to be undertaken by local

housing authorities consistent with applicable state law. While HUD regulation of local public housing authorities is comprehensive, HUD's express accommodation of state regulation of collective bargaining contemplates some concurrent state regulation. Federal law is silent regarding whether local public housing authorities which receive federal funding are permitted to engage in collective bargaining with their employees. However, a HUD circular of March 17, 1967 addressed the issue as follows: "Local housing authorities are * * * public bodies whose powers are defined by State law. It is the policy of the United States, declared in the United States Housing Act of 1937, to vest in the local authorities the maximum amount of responsibility in the administration of the low-rent housing program. Primary responsibility for the establishment of personnel policies governing employees of local housing authorities therefore rests with the local authority. *It is the policy of the Department of Housing and Urban [D]evelopment to afford local housing authorities maximum opportunity and responsibility for the establishment of employee-management relationships, including (consistent with State or local law) recognition of employee organization[s] formed or designated by the employees of the authority for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.*" (Emphasis added.)

Where collective bargaining is provided by state law, HUD review of the agreement is limited to those provisions dealing with economic issues. Accordingly, an October 25, 1968 HUD circular provides as follows: "* * * HUD review [of collective bargaining agreements entered into by housing authorities] and advice to the Local

Authority *shall be limited to those provisions of an agreement which directly and materially affect operating expenses. It shall be the responsibility of the Local Authority to make determinations as to other provisions which may be necessary or desirable in such agreements* after negotiation * * *. In general, HUD will not question such Local Authority determinations * * *. *Such matters would include the nature and scope of recognition and bargaining, grievance procedures, checkoff of union dues, seniority provisions and other noneconomic provisions commonly found in public employee * * * agreements.*" (Emphasis added.)

It appears, then, that HUD has declined to exercise any review of the noneconomic aspects of collective bargaining agreements but will review the economic aspects only in the context of overall budgeting constraints.

We conclude that collective bargaining by CMHA is not precluded by the Supremacy Clause of Article VI of the United States Constitution.

### III

Appellant SERB argues that the governing board of a metropolitan housing authority is a "legislative body" within the meaning of R.C. 4117.10(B) and 4117.14(C). CMHA argues that R.C. 4117.10(B) and 4117.14(C) cannot be constitutionally applied in the present case, and that these two provisions require the legislative body of a public employer, in this case HUD, to reject, under certain circumstances, a proposed collective bargaining agreement within a prescribed period and to fund the implementation of collective bargaining agreements. CMHA points out that the court of appeals concluded that HUD is the "legislative body" within the meaning of R.C. 4117.10(B) and 4117.14(C) because the Act defines "legislative

body" as a public employer's "budget approving body." CMHA concludes that because HUD cannot constitutionally be subject to state regulation as an R.C. Chapter 4117 legislative body, and statutes must be interpreted to give effect to all their provisions, the General Assembly could not have intended to include housing authorities in the definition of "public employer."

The Act's overriding purpose is embodied in the very broad definition of "public employer," to extend the coverage of the Act as widely as possible in order to prevent the disruption of important public services by labor disputes.

SERB's conclusion below, that CMHA's governing board is the "legislative body" within the meaning of R.C. Chapter 4117, constitutes an acknowledgment of this overriding policy and a reasonable interpretation of R.C. Chapter 4117 which avoids the constitutional conflict asserted by appellee. R.C. 4117.10(B) states that "legislative body" includes "* * * the general assembly, the governing board of a municipal corporation, school district, college or university, village, township, or board of county commissioners or *any other body that has authority to approve the budget of their public jurisdiction.*" (Emphasis added.)

Acts of the General Assembly are presumed to comply with the United States Constitution. R.C. 1.47. Furthermore, a court should, if possible, give a statute such construction as will permit it to operate lawfully and constitutionally. *Schneider* v. *Laffoon* (1965), 4 Ohio St. 2d 89, 97, 33 O.O. 2d 468, 472, 212 N.E. 2d 801, 806. Thus, as SERB recognized, the General Assembly could not have intended to include a federal agency within the R.C. Chapter 4117 definition of "legislative body."

Reading the Act as a whole, it is evident that the General Assembly intended "legislative body" to mean the governing body of the public employer with authority to accept or reject a collective bargaining agreement. It is CMHA's governing board, and not HUD, that has ultimate authority to accept and finalize a tentative collective bargaining agreement, or to reject such an agreement. It is CMHA's governing board that must approve a collective bargaining agreement before it is ever sent to HUD for review. HUD reviews the economic provisions of collective bargaining agreements to assess their budgetary impact and to ensure that they are reasonable.

## IV

Another issue involved herein is whether BTC's unfair labor practice charges were untimely brought because they were not filed within ninety days of the date CMHA announced its intent to reclassify its skilled trade workers. In *Lordstown Local School Dist. Bd. of Edn.* v. *Civil Rights Comm.* (1981), 66 Ohio St. 2d 252, 20 O.O. 3d 240, 421 N.E. 2d 511, two public school employees filed charges with the Ohio Civil Rights Commission alleging that their employer unlawfully non-renewed their employment contracts. *Id.* at 253, 20 O.O. 3d at 241, 421 N.E. 2d at 513. The date the school board voted to non-renew the employees' contracts, and the date the school board notified the employees of this action, were outside the applicable limitations period. The date the employees' contracts actually expired and their employment was terminated was much later, and within the limitations period. The school board argued that the charges were untimely because the statute of limitations began to run from the date the employees were notified that the

school board had voted to non-renew their contracts, not from the much later date when their contracts expired and their employment was terminated. *Id.* at 254, 20 O.O. 3d at 241-242, 421 N.E. 2d at 513. This court disagreed and held that the statute of limitations began to run from the date when the employees' contracts expired. *Id.* at 256-257, 20 O.O. 3d at 243, 421 N.E. 2d at 514-515. Thus, a statute of limitations begins to run when an unlawful act occurs, not upon advance notice of the act. Here, BTC filed its charges within the ninety days of CMHA's unilateral reclassification of its skilled-trade employees. Accordingly, BTC's charges were timely filed.

V

The court of appeals, in concluding that CMHA is not subject to R.C. Chapter 4117, held that any action taken by SERB against CMHA pursuant to R.C. Chapter 4117 was unauthorized. Because of this holding, the court of appeals sustained CMHA's assignment of error claiming that its due process rights were violated. For the same reason, the court similarly validated CMHA's assignment of error which claimed that the trial court erred in enforcing SERB's finding that CMHA committed an unfair labor practice, because these unfair labor practices are all a creation of R.C. Chapter 4117.

Our determination herein is that CMHA is subject to R.C. Chapter 4117 and to SERB's orders, and accordingly we reverse the judgment of the court of appeals and reinstate the trial court's judgment.

*Judgment reversed.*

SWEENEY, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

MOYER, C.J., and HOLMES, J., dissent.

JOSEPH DONOFRIO, J., of the Seventh Appellate District, sitting for RESNICK, J.