*NOT RECOMMENDED FOR FULL-TEXT PUBLICATION*
File Name: 05a0695n.06
Filed: August 11, 2005

No. 04-3540

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JEROME B. WILLIAMS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT COURT |
| | ) | FOR THE SOUTHERN DISTRICT |
| GENERAL ELECTRIC CO., | ) | OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: MOORE and COLE, Circuit Judges, and WISEMAN,* Senior District Judge.

**THOMAS A. WISEMAN, JR., Senior District Judge.** Plaintiff-Appellant Jerome B. Williams ("Williams") appeals the district court's order granting summary judgment to Defendant-Appellant General Electric Co. ("GE") as to one of several claims in the underlying action, and also appeals certain pretrial rulings concerning his presentation of damages evidence at trial on another of his claims. For the reasons set forth below, we **AFFIRM** summary judgment in favor of GE and **DISMISS** as moot Williams' appeal on the damages issue.

### I. FACTUAL AND PROCEDURAL HISTORY

Williams began working for GE in June 1967 and remained with GE until his position was eliminated on December 26, 2000. Over the years, Williams held several different positions with GE. As of November 1999, Mr. Williams was Regional Sales Manager in the Power Management

---

*The Honorable Thomas A. Wiseman, Jr., United States District Court for the Middle District of Tennessee, sitting by designation.

Division.

On November 11, 1999, Mr. Williams was notified by his direct supervisor, Michael Coleman, that GE was removing him from his position as Regional Sales Manager but had an opportunity for him in another division. Mr. Williams was 57 years old at that time. He was replaced by David Campbell, who was 31 years old.

After losing his position as Regional Sales Manager, Williams declined a position offered by GE that would have involved relocating, but ultimately secured a position as Transmission Leader with GE's Transmission and Distribution Sales Division. The move to this position clearly can be characterized as a demotion, since Williams' pay was reduced. Williams began working in his new position as Transmission Leader on January 10, 2000; his direct supervisor in the new position was Thomas Bilia.

Ten months later, in October 2000, the entire Transmission and Distribution Sales Division underwent a reduction in force ("RIF"). As a result of the RIF, Bilia was required to eliminate one of the three Transmission Leaders under his supervision. Bilia was given complete discretion regarding which employee to terminate. He ultimately elected to terminate Williams based upon Williams' rankings in a matrix provided to Bilia by the human resources department for evaluating Transmission Leaders. Williams was given notice on October 24, 2000 that his position would be terminated, but his employment with GE did not actually end until December 26, 2000.

Williams' claims arise from his removal from the position of Regional Sales Manager in November 1999 and consequent demotion (the "November 1999 Demotion"), and the termination of his employment with GE altogether on December 26, 2000 (the "December 2000 Termination"), both of which events he claims were a product of one continuous pattern of age discrimination.

2

Williams filed suit on June 25, 2001, alleging age discrimination in violation of federal[1] and Ohio state[2] law with respect to both the November 1999 Demotion and the December 2000 Termination.[3] GE moved for summary judgment of all claims asserted against it. The district court entered summary judgment in GE's favor as to the federal and state age discrimination claims premised upon the November 1999 Demotion on the basis that they were time-barred. The court denied summary judgment as to the federal and state age discrimination claims premised upon the December 2000 Termination, finding those claims were not time-barred and that the existence of material issues of disputed fact precluded summary judgment. Those claims were set for trial.

Shortly before trial, GE filed a pre-trial motion in which it cited new authority in support of its argument that Williams' federal age discrimination claim premised on the December 2000 Termination was time-barred. On the basis of that supplemental authority, the district court reconsidered its initial position and this time granted GE's motion for judgment on the pleadings as to the remaining federal claim. The state age discrimination claim alone proceeded to trial.

Prior to the trial, both parties filed a flurry of pretrial evidentiary motions concerning the presentation of Williams' damages evidence, among other matters. The district court granted GE's motion to limit Williams' damages to those categories and amounts of damages listed in a settlement letter from plaintiff's counsel to defense counsel. The court also granted GE's motion to exclude evidence relating to front-pay damages, possible stock-option grants, and punitive damages.

Williams' state age discrimination claim based on the December 2000 Termination was tried

---

[1]29 U.S.C. § 623 (the Age Discrimination in Employment Act).

[2]Ohio Rev. Code §§ 4112.01, 4112.02, and 4112.99.

[3]Williams had initially asserted claims for disability discrimination in violation of federal and state law but later agreed to the dismissal of those claims with prejudice.

before a jury. Although the district court had ruled that any claims related to the November 1999 Demotion were time-barred and thus could not serve as the basis for a separate age discrimination claim, Williams was permitted to introduce evidence of the November 1999 Demotion in support of his theory of a continuing pattern of age discrimination that culminated in the December 2000 Termination. Regardless, the jury rendered a verdict in favor of GE. This appeal followed. Williams only appeals (1) summary judgment in favor of GE on his state law age discrimination claim based upon the November 1999 Demotion, and (2) the district court's pretrial rulings regarding his presentation of damages.

## II. ANALYSIS

### A. Standard of Review of Summary Judgment

We review a district court's decision to grant summary judgment *de novo*. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Generally speaking, this Court must view the facts and any inferences reasonably drawn from them in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. State Law Age Discrimination Claim

As indicated above, Williams appeals the summary judgment only with respect to the dismissal of his state age discrimination claim based upon the November 1999 Demotion. "A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky,*

*Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999) (citing *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998)). Accordingly, Ohio law applies here, and it is clear that discrimination claims based on Ohio law are subject to a 180-day statute of limitations. *Oker v. Ameritech Corp.*, 729 N.E.2d 1177, 1178–79 (Ohio 2000).[4] The only issue in dispute is the date on which the limitations period began to run. GE argues, and the district court found, that the statute for any claims pertaining to the November 1999 Demotion began to run on the day of the Demotion and therefore expired well before Williams filed suit in June 2001. Williams argues that it did not begin to run until the day of the December 2000 Termination.[5]

In support of his position, Williams presents a two-pronged argument: (1) that the Ohio Supreme Court held in *Oker* that the statute of limitations applicable to an age discrimination claim begins to run on the date of the employee-plaintiff's last day of employment, which ruling he claims should apply to his case; and (2) that the statute of limitations period was tolled until December 26, 2001 under a "continuing violation" theory. Neither argument is availing.

## 1. The Statute of Limitations

In *Oker*, the Ohio Supreme Court stated: "[W]e hold that the statute of limitations period applicable to age-discrimination claims brought under R.C. Chapter 4112 begins to run on the date of the employee-plaintiff's termination from the defendant-employer." 729 N.E.2d at 1179.

---

[4]The Ohio General Assembly enacted a tort reform statute in 1997, H.B. 350, which changed the statute of limitations for all employment-discrimination actions under Ohio Rev. Code Chapter 4112 to two years. In 1999, however, the Ohio Supreme Court struck down H.B. 350 altogether as unconstitutional, thereby rendering the amendments to Chapter 4112 a nullity and causing the statute of limitations for age discriminations claims to revert to the pre-H.B. 350 period of 180 days. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 715 N.E.2d 1062, 1111 (Ohio 1999).

[5]As the district court noted, the Complaint was filed on June 25, 2001, actually 181 days after December 26, 2000, but was timely with respect to the claims based on Williams' Termination because the 180th day fell on a Sunday. *See* Fed. R. Civ. P. 6(a); Ohio R. Civ. P. 6(a).

Williams argues that this holding should apply to his case and, because his actual termination did not occur until December 26, 2000, he contends the statute of limitations did not begin to run until that day.

Although the Ohio Supreme Court did make the statement as quoted, the actual holding in the case does not support Williams' position. In *Oker*, the plaintiff, an Ameritech in-house lawyer, sought a position with the company's reorganized legal department. *Id.* at 1178. On November 9, 1994, Ameritech informed the plaintiff that his application had been denied. *Id.* The plaintiff was ultimately terminated from Ameritech's legal department on January 7, 1995, but he remained with Ameritech as a customer-service representative until April 15, 1995 while he sought new employment. *Id.* The Ohio Supreme Court found that the statute of limitations period for his age discrimination claim began to run on January 7, 1995, the day the plaintiff was terminated from the legal department, rather than on November 9, 1994, the day that Ameritech informed the plaintiff that he would be terminated, *or* on April 15, 1995, the day plaintiff's employment with the company actually ended. *Id.* at 1180. Thus, while the court stated that the statute began to run "on the date of the employee-plaintiff's termination from the defendant-employer," it actually held that the statute began to run on the date of the employee's termination from the legal department, since it was that termination, not his later termination from a temporary position, which constituted the discriminatory act.

In *Oker*, the court distinguished the facts before it in both that case from those at issue in *Delaware State College v. Ricks*, 449 U.S. 250 (1980), where a non-tenured college professor claimed the defendant college had discriminated against him on the basis of race by denying him tenure, issuing him a one-year contract, and notifying him of its intent to terminate his employment at the expiration of this one-year contract. The *Ricks* Court held that the limitation period began

6

running when the tenure decision was made and Ricks was notified, and not at the expiration of the one-year contract. *Id.* at 259. The Ohio Supreme Court (while noting that the standards under federal law are not identical to those under state law) maintained that its decision was consistent with *Ricks* because, in both cases, the statute began to run at the time of "the final discriminatory act." *Oker*, 729 N.E.2d at 1180. In *Ricks*, the discriminatory act was the denial of tenure; the mere expiration of the one-year contract, which began at the time of the denial of tenure, did not constitute an additional discriminatory act. Conversely, in *Oker*, the notice given the employee was notice of a future act of discrimination, that is, the actual termination of his employment in the legal department. *Id.*[6]

Recently, in *Kozma v. AEP Energy Services, Inc.*, No. 04AP-643, 2005 WL 615649 (Ohio Ct. App. March 17, 2005), the plaintiff-employee appealed from summary judgment granted in favor of the defendant-employer on the basis of the statute of limitations. There, the employer had announced in the fall of 2002 that it would undertake a corporate-restructuring program, which included a plan for lay-offs in its Columbus office where the plaintiff was employed. Following the

---

[6]Williams also relies upon Lordstown Board of Education v. Ohio Civil Rights Commission, 421 N.E.2d 511, 513 (Ohio 1981), in which the Ohio Supreme Court considered the statute of limitations applicable to a suit charging sexual discrimination under state law. That case involved two teachers who were working for the school district under one-year limited contracts. When the school district refused to renew the teachers' contracts after their first year of employment, both teachers filed claims alleging that the board of education refused to renew the contracts after learning that they were pregnant. The school district argued that the complaints were not timely because the statute of limitations period had begun to run at the time the teachers were informed that their contracts would not be renewed. The court held instead that the statute began to run on the day the teachers' contracts expired without renewal, so their claims were not barred by the statute. As the court later explained in Oker, "in holding that the claims were timely filed, . . . we concluded that the final discriminatory act of the school board occurred upon the termination of the annual employment contracts." Oker, 729 N.E.2d at 1179-80. *Lordstown* is distinguishable from the case at bar simply because there was no continued period of employment after the "final discriminatory act," that is, their last day of employment.

7

announcement, the company posted a list indicating which employees were scheduled to be released in two planned "waves" of lay-offs and which would be retained. Plaintiff's name was on the list of those slated to be released. Rather than releasing plaintiff in the first "wave," the company agreed to keep him employed as head of a special project during a "retention period." Plaintiff's management position terminated effective December 15, 2002, and his assignment to work on the special project began the next day, December 16, 2002. The company guaranteed employment to plaintiff through May 31, 2003. Plaintiff worked full time on the special project until it prematurely ended in March or April 2003. Sometime in March, he was assigned to a different project, where he worked as scheduled through May 31, 2003. He instituted an action for employment discrimination on June 23, 2003.

As is the case here, there was no dispute in *Kozma* that "the limitations period applicable to appellant's claim for age discrimination is found at R.C. 4112.02(N), which provides, '[a]n aggrieved individual may enforce the individual's rights relative to discrimination on the basis of age as provided for in this section by instituting a civil action, *within one hundred eighty days after the alleged unlawful discriminatory practice occurred*." *Id.* at *7 (emphasis in original) (quoting Ohio Rev. Code § 4112.02(N)). The issue on appeal was whether the limitations period began to run on December 16, 2002, when the plaintiff was removed from his management position and assigned to the special project pursuant to the parties' retention agreement, or on either March 5, 2003, the last day on which he worked on the special project, or May 31, 2003, his last day of employment.

Citing *Oker* as well as *Ricks* and other persuasive federal authority, the Ohio Court of Appeals held that the plaintiff's cause of action accrued, and the statute began to run, no later than December 16, 2002, by which time the employer's decision to terminate his position and replace him

with a younger employee "had present, palpable injurious effects . . . and [plaintiff] was aware of such actions." *Id.* at \*11.

Williams' situation is closely analogous to that of the claimants in *Oker* and *Kozma*: He learned on November 11, 1999 that he was losing his position as Regional Sales Manager and was being replaced with a much younger employee with less relevant experience. He clearly suffered an adverse employment action at that time. The cause of action accrued and the limitations period began to run on the day Williams was removed from his position. Williams did not file a lawsuit based upon that action until, June 25, 2001—more than a year and a half later and thus well after the expiration of the 180-day limitations period.[7]

Notwithstanding, Williams claims that as a matter of policy, a finding that an employee should be required to sue his employer for discrimination while still employed, "even if in a sham position," would be "disruptive to the employer/employee relationship." (Appellant's Brief at 27.) Williams' policy argument has clearly been rejected by the Ohio legislature and Ohio courts, as demonstrated in both *Oker* and the more recent *Kozma*. The district court correctly determined that Williams' state law age discrimination claim based upon the November 1999 Demotion accrued on the date of his removal from the position of Regional Sales Manager, rather than on the last day of his employment with GE.

### 2. "Continuing Violation" Theory

---

[7]At oral argument, counsel for Williams stated that Williams was not actually removed from his management position until sometime in January 2000. If in fact there was a time-lag between the date Williams was notified that his employment as Regional Sales Manager was being terminated and the date his employment in that position actually terminated, then the statute of limitations began to run on the latter date. *Accord Lordstown*, 421 N.E.2d at 514. That distinction is immaterial in this case, however: Whether the demotion became effective in November 1999 or January 2000, it happened more than 180 days before he filed suit on June 25, 2001.

In the alternative, in an effort to avoid application of the statute of limitations, Williams asserts that the two actions (the Demotion and the Termination) were not discrete actions but merely separate manifestations of one continued effort to terminate his employment for a discriminatory reason. *Cf. Featzka v. Millcraft Paper Co.*, 405 N.E.2d 264 (Ohio 1980) (finding the statute of limitations in that case began to run on the date of the last instance of a "continuing violation" in the context of a wage discrimination claim under Ohio Rev. Code § 4111.17).

The fundamental problem with Williams' position, however, is that a jury heard that argument and the evidence in support of it but nonetheless decided that GE did not engage in discriminatory treatment of Williams in terminating his employment on December 26, 2000. Williams has not appealed the jury verdict, so it forms part of the law of this case. *See Klemencic v. Ohio State University*, 263 F.3d 504, 511 (6th Cir. 2001) (Clay, J., concurring) ("The law of the case . . . prevents a litigant from resurrecting an issue that has already been decided by a lower court and that has gone unchallenged on appeal.") (citation omitted); *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir.1994) ("Under the doctrine of the law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation."). Because the jury already determined that the December 2000 Termination was not discriminatory, then the last allegedly discriminatory act of which Williams has any proof is the November 1999 Demotion, that is, his removal from the position of Regional Sales Manager of GE's Power Management Division , which occurred more than 180 days before Mr. Williams filed suit. Accordingly, Mr. Williams has no facts to support his allegation of a "continuing violation" (assuming the legal theory to be valid).

Under clearly articulated Ohio law, the "last discriminatory act" of which Williams has any potentially valid basis for complaint occurred when he was removed from his position as Regional

Sales Manager in November 1999. The fact that he stayed on with GE for another thirteen months did not toll the running of the statute of limitations. The district court correctly found that Williams' discrimination claim based upon the November 1999 Demotion was time-barred by the applicable statute of limitations.

## C.      Evidentiary Issues

Williams claims the district court improperly limited his ability to present evidence to the jury of certain types of damages, including front pay and punitive damages. These issues are moot as a result of the jury verdict in favor of the defense. *Cf. General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1030 (6th Cir. 1994) (refusing to consider question certified for appeal concerning damages where liability had not yet been established, noting that a jury verdict of liability in the defendant's favor "would render the question of damages entirely moot"); *Ralph by Ralph v. Nagy*, 950 F.2d 326, 329 (6th Cir. 1991) (noting that "[i]ssues that would otherwise be appropriate for review are commonly mooted by a jury's verdict," and refusing to consider appellant's claims regarding error in the admission of evidence on proximate cause on the basis that they had been rendered moot by a jury verdict in favor of the defense on the question of negligence).

### CONCLUSION

For the reasons set forth above, the district court's order granting summary judgment is **AFFIRMED**, and the appeal regarding the presentation of damages evidence is **DISMISSED** as moot in light of the jury verdict in favor of the defendant.