SEITH et al., Appellants,

v.

**OHIO REAL ESTATE COMMISSION, Appellee.**

[Cite as *Seith v. Ohio Real Estate Comm.* (1998), 129 Ohio App.3d 432.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 73181, 73182.

Decided Aug. 17, 1998.

*Reminger & Reminger Co., L.P.A., George S. Coakley* and *Brian D. Sullivan,* for appellants.

*Betty D. Montgomery,* Attorney General, and *Kenneth F. Affeldt,* Assistant Attorney General, for appellee.

PORTER, Presiding Judge.

Appellants Marjorie J. Seith and David C. Paul, real estate agents, appeal from the judgment of the common pleas court affirming the order of the Ohio Real Estate Commission suspending appellants' licenses for violations of R.C. 4735.18(A)(19) and (B) in negotiating a real estate transaction exclusively listed with another broker. Appellants contend that their conduct did not constitute improper negotiation prohibited by the statutes. We find no error and affirm.

In July 1995, Mr. and Mrs. Johanns owned residential property located at 580 County Line Road in Gates Mills, Ohio. The Johanns had entered into an exclusive listing contract for the property with Century 21/Launders Realtors and maintained Connie Peterson as their real estate agent.

During the term of this exclusive listing contract, Seith of Smythe Cramer Realty Company found a couple, the Gleasons, who were interested in purchasing the Johannses' home. On July 19, 1995, Seith contacted Peterson and advised her that she had interested buyers who were prepared to submit a written offer the next day. However, that same evening, Peterson brokered an offer from another couple, the Schmidts, through the Hackett & Arnold Real Estate Company. The Johannses accepted the Schmidts' offer that evening.

The next morning, Seith learned from Peterson that the Johannses had accepted another offer and that the property was already sold. Seith then informed the Gleasons of the sale. Subsequently, the Gleasons phoned the Johannses, whom they had met at an impromptu visit to the house. Mrs. Johanns said that they wanted to see the Gleasons' offer and to have it delivered to the house. Seith sought advice from her supervisor at Smythe Cramer, Paul, who instructed her to deliver the Gleasons' offer directly to the Johanns as directed. Seith delivered the offer in person and indicated that the Gleasons were willing to pay more for the property than the Schmidts' offer, which met the $585,000 asking price. Due to the conversation with Seith, the Johannses

contacted Peterson to see if they were bound by the Schmidts' offer they had accepted. Peterson indicated that the contract had been executed and that it was binding. As a result of Seith's direct dealing with the owner of the property that had an exclusive listing with another broker, complaints were filed with the Ohio Real Estate Commission against Seith and Paul.

On July 23, 1996, a hearing was conducted before an Ohio Real Estate Commission hearing officer. Evidence was presented, and on August 5, 1996, the hearing officer issued his findings of fact and conclusions of law. The hearing officer concluded from his findings that Seith had violated R.C. 4735.18(A)(19) and that Paul had violated R.C. 4735.18(B).

On October 1, 1996, on appeal, the commission adopted the findings and conclusions of the hearing officer. Paul and Seith appealed that determination to the trial court. On August 13, 1997, the trial court determined that the Ohio Real Estate Commissions's findings were supported by reliable, probative, and substantial evidence and that its conclusions were in accordance with law. This appeal timely ensued.

Appellants' sole assignment of error states as follows:

"The Ohio Real Estate Commission incorrectly determined that appellants violated Section 4735.18 of the Ohio Revised Code when there was no evidence that Ms. Seith negotiated the sale of real property."

The standards of review in both the trial court and this court on an R.C. 119.12 administrative appeal were recently set forth in *Diversified Benefit Plans Agency, Inc. v. Duryee* (1995), 101 Ohio App.3d 495, 499, 655 N.E.2d 1353, 1355:

"When reviewing an order of an administrative agency, a common pleas court acts in a 'limited appellate capacity.' *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 343, 587 N.E.2d 835, 838. In reviewing an order of an administrative agency pursuant to R.C. 119.12, the common pleas court is bound to affirm the agency's order 'if it is supported by reliable, probative, and substantial evidence, and is in accordance with the law.' *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750. See, also, *Bottoms Up, Inc. v. Ohio Liquor Control Comm.* (1991), 72 Ohio App.3d 726, 728, 596 N.E.2d 475, 476. The common pleas court ' "must give due deference to the administrative resolution of evidentiary conflicts" ' and therefore must not substitute its judgment for that of the administrative agency. *Hawkins v. Marion Corr. Inst.* (1990), 62 Ohio App.3d 863, 870, 577 N.E.2d 720, 724, quoting *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267.

"An appellate court's review of the trial court's decision is even more limited and requires the appellate court 'to determine only if the trial court has abused

its discretion, *i.e.*, being not merely an error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency.' *Pons,* 66 Ohio St.3d at 621, 614 N.E.2d at 750–751. Where the common pleas court applies a standard of review greater than that called for in R.C. 119.12, the trial court has abused its discretion. *Bottoms Up, Inc.,* 72 Ohio App.3d at 729–730, 596 N.E.2d at 476–477."

In this case, we find that the trial court correctly concluded that the Ohio Real Estate Commission's determination was supported by reliable, probative, and substantial evidence and was in accordance with law. There was no abuse of discretion.

R.C. 4735.18(A)(19) provides that a real estate license may be suspended or revoked if a licensee is found guilty of:

"Having negotiated the sale, exchange, or lease of any real property directly with an owner, purchaser, lessor, or tenant knowing that such owner, purchaser, lessor, or tenant had a written outstanding contract granting exclusive agency in connection with such property to another real estate broker[.]"

The commission determined that Seith's conduct in delivering the Gleasons' written offer constituted a "negotiation of the sale" of real property in violation of the statute. The commission recognized that Seith's actions could have resulted in a serious legal problem for the Johannses with two contracts for the sale of the same property with two separate purchasers at the same time. Seith knew that the property had already been sold yet chose to bypass Century 21/Launders, the exclusive listing broker, without the express authority to do so. Such a situation could have exposed the Johannses to a potential lawsuit by the Schmidts. The commission found that, even though Seith was following the recommendation of Paul, she had violated R.C. 4735.18(A)(19), as that section does not require purposeful or carelessness conduct.

Additionally, the commission suspended Paul's license under R.C. 4735.18(B), which states:

"Whenever the commission, pursuant to section 4735.051 of the Revised Code, imposes disciplinary sanctions for any violation of this section, the commission also may impose such sanctions upon the broker with whom the salesperson is affiliated if the commission finds that the broker had knowledge of the salesperson's actions that violated this section."

On the morning of July 20, 1995, Seith learned from Peterson that the Johannses' property had already been sold. Seith believed that multiple written offers were going to be submitted on July 20, 1995, pursuant to her July 19, 1995 conversation with Peterson. However, the Schmidts' offer had been accepted the evening before.

Because she was unsure about what she should do with the Gleasons' offer, she contacted Paul for advice. Paul advised her to drop off the Gleasons' written offer directly to the Johannses. Both Paul and Seith knew that a written contract had been executed on the Johannses' property the night before. In addition, both Paul and Seith knew that Century 21/Launders was the exclusive listing agency. Nevertheless, Seith delivered the Gleasons' written offer to Mrs. Johanns and stated that the Gleasons were willing to pay more for the home than the Schmidts' offer of the $585,000 asking price. This contact could be construed as a deliberate attempt by Seith, at the direction of Paul, to persuade the Johannses to rescind their contract with the Schmidts and accept a contract with the Gleasons. The commission found from the evidence that Seith had violated R.C. 4735.18(A)(19) by contacting the Johannses directly and soliciting their business, and that Paul had violated R.C. 4735.18(B) because he instructed her to meet with the Johannses.

■ Seith was under an obligation to contact the exclusive listing agent to communicate any offers. *Ohio Real Estate Comm. v. Thomas* (1966), 7 Ohio App.2d 93, 36 O.O.2d 200, 218 N.E.2d 762. A cooperating broker is not permitted to usurp a listing broker's role in fulfilling its responsibility to its seller. The hearing officer stated in his findings of fact and conclusions of law respecting Paul:

"Whatever the Johanns[es] were going to do or not do with the Gleasons' offer, it was Century 21/Landers that held presentational authority with regard to that agreement. Respondent's brokerage had not been given express authority from the listing company to bypass it."

Appellants state that since the offer was only delivered, a negotiation of the sale did not take place. However, the hearing officer correctly concluded that it was a negotiation since the offer, as presented, was open and subject to approval. The term "negotiation" has been defined as:

" '[A] process of submission and consideration of offers until an acceptable offer is made, and accepted, or until.it becomes apparent that no acceptable offer will be made. The brevity or the length of the haggling does not remove it from the definition of negotiation.' " *Tambur's, Inc. v. Hiltner* (1977), 55 Ohio App.2d 90, 92, 9 O.O.3d 239, 240, 379 N.E.2d 231, 233, quoting *United States v. McShain* (C.A.D.C.1958), 258 F.2d 422, 424.

Seith's behavior constituted a "negotiation" within the meaning of R.C. 4735.18(A)(19). She advised the Johannses that the Gleasons were prepared to top the Schmidts' offer. Once Seith presented that offer and stated that the Gleasons were willing to pay more, her actions constituted a submission and consideration of the offer under the definition of negotiation. A successful sale is

not necessary to a negotiation and the length of time of the communications is irrelevant. Seith's overtures appeared successful because the Johannses attempted to get out of the contract with the Schmidts. However, they were told that the contract had already been executed and that they were bound. Accordingly, the parties went through a "process of submission and consideration," although a brief one, until "it [became] apparent that no acceptable offer [would] be made."

The Ohio Real Estate Commission, which has primary enforcement responsibility in the licensing and disciplining of real estate salespeople, rendered a determination with respect to appellants that is supported by reliable, probative, and substantial evidence and is in accordance with law. This administrative agency must be accorded due deference by this court. See *Rose Hill Chapel-Ciriello Funeral Home v. Ohio Bd. of Embalmers & Funeral Dirs.* (1995), 105 Ohio App.3d 213, 218, 663 N.E.2d 978, 981, where the court ruled that "an administrative agency's construction of a statute that the agency is empowered to enforce must be accorded due deference," citing *Leon v. Ohio Bd. of Psychology* (1992), 63 Ohio St.3d 683, 687, 590 N.E.2d 1223, 1226, and *Chaney v. Clark Cty. Agricultural Soc., Inc.* (1993), 90 Ohio App.3d 421, 426, 629 N.E.2d 513, 516–517. Consequently, we find that the court of common pleas did not abuse its discretion in affirming the agency's order.

Appellants' sole assignment of error is overruled.

*Judgment affirmed.*

SPELLACY and MICHAEL J. CORRIGAN, JJ., concur.