[Cite as *Harper v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-1540.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ALAN R. HARPER, | ) | |
| | ) | CASE NO. 08 MA 259 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| DEPT. OF REHABILITATION & | ) | |
| CORRECTIONS, OHIO STATE | ) | |
| PENITENTIARY, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |


CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas
                              Court, Case No. 07 CV 4450.


JUDGMENT:                     Affirmed.


APPEARANCES:
For Plaintiff-Appellant:      Attorney Martin S. Hume
                              6 Federal Plaza Central, Suite 905
                              Youngstown, OH 44503-1506

For Defendant-Appellee:       Richard Cordray
                              Attorney General
                              Timothy M. Miller
                              Assistant Attorney General
                              30 E. Broad Street, 23rd Floor
                              Columbus OH 43215-3167


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                                              Dated: March 30, 2010

DeGenaro, J.,

**{¶1}** This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-Appellant, Alan R. Harper, appeals the decision of the Mahoning County Common Pleas Court affirming the administrative appeal decision of the State Personnel Board of Review (SPBR) ordering Harper's removal from his position as Corrections Lieutenant at Defendant-Appellee Department of Rehabilitation & Correction, Ohio State Penitentiary (ODRC). On appeal, Harper argues that the ALJ erred by failing to admit his proffered evidence of disparate treatment. He claims the SPBR erred by failing to accord the proper deference to the recommendation of the Administrative Law Judge (ALJ), and by failing to state its reasons for departing from the ALJ's recommendation. Finally, Harper argues that the trial court's decision affirming the SPBR's determination that ODRC had proved the allegations contained in the order of removal by the preponderance of the evidence was not supported by reliable, probative, and substantial evidence. Upon review, his arguments are meritless.

**{¶2}** The ALJ committed no error by failing to admit Harper's disparate treatment evidence since the alleged comparables were disciplined by prior wardens, not by Warden Houk, the appointing authority who disciplined Harper. The SPBR gave proper deference to the recommendation of the ALJ since the SPBR has broad authority to modify, in whole or in part, any report and recommendation. Further, the SPBR sufficiently stated its reasons for departing from the ALJ's recommendation by referring to ODRC's objections. Finally, the trial court's decision to affirm the order of removal was not an abuse of discretion. Accordingly, the decision of the trial court is affirmed.

### Facts and Procedural History

**{¶3}** On August 1, 2006, Harper was removed from his position as Corrections Lieutenant with the ODRC at the Ohio State Penitentiary (OSP) in Youngstown. The removal order alleged that Harper was guilty of violating the following OSP rules: Rule 5D – Purposeful or careless act which result in one of more of the following: unsafe Act; Rule 7 – Failure to follow post orders, administrative regulations, policies or directives; Rule 24 – Interfering with, failing to cooperate in, or lying in an official investigation or inquiry; Rule

25 – Failure to immediately report a violation of any work rule, law or regulation; Rule 27 – Failure of a supervisor to properly supervise or enforce work rules; and Rule 49 – Any violation of ORC 124.34, including dishonesty, neglect of duty, failure of good behavior. These alleged infractions stemmed from two cell "extractions" of a recalcitrant inmate named Johnson that were performed by a team assembled and supervised by Harper.

{¶4} On April 1, 2006, inmate Johnson had become unruly in his cell in the C-Block of OSP, a maximum-security facility, and the staff at the OSP began taping his actions, per ODRC protocol. Johnson was sticking his arms and legs outside the cuff port in his cell door, and refusing direct orders to close the cuff port. Harper was the supervisor on duty that evening. After attempts at mediation with Johnson failed, Harper requested permission from his shift supervisor, Captain Glen Brown, to conduct a cell extraction, whereby inmate Johnson would be forcibly removed from his cell and placed in a separate holding cage, or "strip cage" to encourage compliance with prison regulations. Harper received permission and assembled an extraction team consisting of five corrections officers and a videographer. The extraction was performed, mace was used per ODRC protocol, and inmate Johnson was moved to the strip cage. A video of the extraction showed one of the officers kick the inmate two times as he was moved to the strip cage. The inmate was restrained and not overtly struggling at that time. The video also revealed that instead of placing the inmate in the strip-cage, the officers launched him in with the front of his body facing the ground, while his hands were cuffed behind his back and legs shackled. The inmate's side scraped against the floor, as he was powerless to break his fall.

{¶5} While in the strip cage, inmate Johnson was visibly upset and taunted the corrections officers extensively for about thirty minutes. The inmate was escorted to the shower by Harper and one other corrections officer with only his hands cuffed behind his back to decontaminate from the mace. Afterwards, the inmate refused to leave the shower pod and Harper, after receiving a second authorization, decided to perform another extraction. Harper used the same team he had used for the first extraction, and this second extraction was also videotaped. The video of the shower extraction shows

another officer kick and stomp on the inmate, to which the inmate responded: "No pain!" It also shows the officers ram the inmate's head into a steel door twice as they moved him to a cell.

{¶6}     After the extractions, Harper, along with members of the extraction team, submitted incident reports.  Harper also viewed the video of the extractions with Captain Brown, and despite Captain Brown's voiced concerns, Harper failed to amend his incident report.  Captain Brown contacted Deputy Warden Jeffrey Remmick to further review the incidents.  After reviewing the reports and the video, Deputy Warden Remmick felt that Harper's report did not accurately describe what occurred.

{¶7}     Per Deputy Warden Remmick's recommendation, the incident was referred to a Use of Force Committee, which determined excessive force was used and that discipline should ensue.  All of the corrections officers involved received some sort of disciplinary action.  Harper was ultimately removed from his position, by order of OSP Warden Marc Houk.  The removal order provided the following reasoning:

{¶8}     "On April 6, 2006, you were interviewed by the Use of Force Committee and a second time on April 11, 2006.  You failed to prevent, stop or report excessive uses of force on four (4) occasions involving Inmate Johnson #426-753.  The first was the launching of the inmate into the strip cage.  When questioned about this incidence, you stated, 'this was an appropriate action for the team.'  You, during the second use of force were standing not more than two (2) or three (3) feet from Officer Michael Henyard and you failed to order Officer Michael Henyard to stop kicking or stomping on Inmate Johnson #426-573 in the shower.  The third occasion came when the cell extraction team drove the inmate's head and face into the cell door.  You, again, were no more than three (3) to five (5) feet from the team and the inmate when this was taking place.  When you were questioned about witnessing the excessive use of force by the members of the cell extraction team, you responded, 'I felt it was a good Use of Force and I did not see anyone use any excessive use of force.'  The fourth incident occurred when Officer Kevin Shimko kicked inmate Johnson #426-573 while he was held on the ground by the cell extraction team.  You were given the opportunity by the Use of Force Committee to view

the videotape of the Use of Force involving Inmate Johnson #426-573, on two (2) occasions. On April 1, 2006 there were several incidents involving the inmate. In your incident report, you were not forthright in your statement compared to what you observed regarding the incidents of April 1, 2006."

{¶9} Harper filed a timely appeal of the removal order to the SPBR and a two-day hearing was held before an ALJ, commencing on March 2, 2007. During the hearing, Harper sought to introduce disparate treatment evidence, which is evidence demonstrating how other corrections lieutenants who committed similar infractions had been disciplined in the past. The ALJ denied this request, but allowed Harper to proffer that evidence into the record.

{¶10} On September 28, 2007, the ALJ issued a Report and Recommendation in which he found that based on a preponderance of the evidence, Harper had violated all of the rules listed in the order of removal. However, the ALJ decided to modify Harper's removal to a suspension and reduction in position and salary.

{¶11} Both sides filed objections to the ALJ's Report with the SPBR. On November 14, 2007, the SPBR adopted the findings of fact set forth in the ALJ's Report, but declined to adopt the ALJ's penalty modification, instead affirming the ODRC's decision to remove Harper from his position.

{¶12} Harper filed a timely appeal to the Mahoning County Court of Common Pleas, raising the same assignments of error he asserts in this appeal. A magistrate issued a decision overruling Harper's assignments of error and affirming the SPBR's decision. Harper filed objections to the magistrate's decision. A hearing was held before the trial court on the objections, during which the trial court viewed the video of the extractions. In a November 18, 2008 judgment entry, the trial court overruled the objections and adopted the magistrate's decision affirming the decision of the SPBR.

## Standard of Review

{¶13} R.C. 124.34 governs judicial review of administrative appeal decisions issued by the SPBR and authorizes appellants who disagree with an administrative appeal decision to appeal to the court of common pleas pursuant to the procedures

outlined in R.C. 119.12.  See R.C. 124.34(B).

{¶14}  R.C. 119.12 states that the common pleas court must examine the entire record and affirm the agency's decision if it "is supported by reliable, probative, and substantial evidence and is in accordance with law."  See, also, *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 109-10, 17 O.O.3d 65, 407 N.E.2d 1265.

{¶15}  A common pleas court's review of an agency decision is "a hybrid: neither strictly of law nor of law and fact.  While not a trial de novo, the common pleas court must nonetheless 'read and consider all the evidence offered by both sides and must appraise all of the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'"  *Hummel v. Ohio Dept. of Job & Family Servs.*, 164 Ohio App.3d 776, 2005-Ohio-6651, 844 N.E.2d 360, at ¶21, quoting *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390.  With respect to purely legal questions, however, the common pleas court exercises de novo review.  See *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591.

{¶16}  Like the common pleas court, the court of appeals also exercises de novo review over questions of law.  *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096, at ¶43; *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, 784 N.E.2d 753, at ¶15.  With regard to questions of fact, the parties dispute the proper standard of review that an appellate court should apply.

{¶17}  ODRC argues that the standard of review is an abuse of discretion.  This standard has been utilized in numerous Ohio Supreme Court decisions.  For example in *Kennedy v. Marion Correctional Inst.* (1994), 69 Ohio St.3d 20, 630 N.E.2d 324, the Court held that "[w]hile the determination to be made by the court of common pleas is based on whether there is reliable, probative and substantial evidence to support the board's finding, the standard of review to be applied by [a reviewing court] is whether the court of common pleas abused its discretion in making that determination."  Id. at 21-22; see, also, *Bartchy* at ¶40-42; *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614

N.E.2d 748.

{¶18} Harper advocates a different standard of review. He cites to *Brown v. Ohio Bur. of Emp. Servs.* (1994), 70 Ohio St.3d 1, 635 N.E.2d 1230, in support of his argument that with respect to factual determinations, the decision of the court of common pleas should be reviewed to determine whether it is supported by "reliable, probative, and substantial evidence." Id. at 3.

{¶19} However, *Brown* is somewhat of an anomaly because therein the Ohio Supreme Court inexplicably deviated from its prior holdings about the proper standard of review. And in decisions subsequent to *Brown*, the Supreme Court has reverted to the abuse of discretion standard. See *Bartchy*, *Pons*, supra. Post-*Brown*, many appellate districts, including this one, have continued to apply an abuse of discretion standard. See *Howell v. Ohio Dept. of Job & Family Servs.*, 7th Dist. No. 08 BE 25, 2009-Ohio-1510 at ¶25; *In re Jack Fish & Sons Co., Inc.*, 159 Ohio App.3d 649, 2005-Ohio-545, 825 N.E.2d 171, at ¶7 (Fourth District); *Allgood v. Akron* (2000), 136 Ohio App.3d 529, 532, 737 N.E.2d 111 (Ninth District); *Steinfels v. Ohio Dept. of Commerce, Div. of Securities* (1998), 129 Ohio App.3d 800, 803, 719 N.E.2d 76 (Tenth District); *Sohi v. Ohio State Dental Bd.* (1998), 130 Ohio App.3d 414, 421, 720 N.E.2d 187 (First Disctrict); *Seith v. Ohio Real Estate Comm.* (1998), 129 Ohio App.3d 432, 434-435, 717 N.E.2d 1169 (Eighth District). Thus, until further clarification comes from the Supreme Court on this issue, we will continue to apply an abuse of discretion standard.

{¶20} Here, this standard applies only to Harper's fourth assignment of error, wherein he challenges the common pleas court's decision to affirm the SPBR's order of removal. Harper's first three assignments of error involve legal questions which require de novo review.

### Failure to Admit Evidence of Disparate Treatment

{¶21} Harper's first of four assignments of error asserts:

{¶22} "The Administrative Law Judge and the State Personnel Board of Review committed error prejudicial to Appellant and violated Appellant's right to due process of law and equal protection under the law by improperly excluding evidence of disparate

treatment of similarly situated corrections lieutenants at the Ohio State Penitentiary."

**{¶23}** Pursuant to Ohio Adm.Code 124-9-11(A), the SPBR "may hear evidence of disparate treatment between the appellant and other similarly situated employees of the same appointing authority for the purpose of determining whether work rules or administrative policies are being selectively applied by the appointing authority or to determine whether the discipline of similarly situated employees is uniform." Ohio Adm.Code 124-9-11(B) provides that "[e]vidence of disparate treatment will be considered in evaluating the appropriateness of the discipline which was imposed."

**{¶24}** Harper attempted to introduce evidence regarding the discipline of three similarly situated OSP employees. These employees were all Corrections Lieutenants at OSP and received discipline relating to incidents where excessive force was used with an inmate. These employees had no record of previous discipline, but all received short suspensions for their misconduct, penalties much less serious than the one received by Harper.

**{¶25}** However, none of the employees were disciplined by Warden Houk, the appointing authority who ordered Harper's removal from his position in the instant case. The ALJ disallowed Harper's disparate treatment evidence because the wardens imposing discipline were not the same, making a comparison improper. Harper argues on appeal, as he did in the administrative proceedings and in the trial court that it is unnecessary for the warden to be the same person in each comparative example. Rather, he argues that the term "appointing authority" should be read much more broadly: meaning anyone holding the position of warden at the OSP. Thus, resolution of this assignment of error turns on the interpretation of the phrase "same appointing authority."

**{¶26}** Harper first points to several statutes and administrative code provisions that define the term "appointing authority," namely R.C. 124.01, R.C. 5120.38 and Ohio Adm.Code 5120-7-01. These authorities do establish that the warden is the appointing authority at OSP. However none of the provisions interpret the phrase "same appointing authority" in the context of a disparate treatment claim pursuant to Ohio Adm.Code 124-9-11(A), nor do they support Harper's argument that the term "same appointing authority"

means any person who held the position of warden at OSP.

{¶27} In addition, Harper cites *Lyons v. Northwest Ohio Developmental Center* (1985), 17 Ohio St.3d 250, 17 OBR 486, 479 N.E.2d 272. However, *Lyons* did not address the meaning of "same appointing authority" with regard to disparate treatment evidence either. The issue in *Lyons* was whether R.C. 124.34 mandates that the "appointing authority" be named as appellant in the notice of appeal to the common pleas court from the SPBR. The Supreme Court held that it does not. Id. at syllabus. Harper is correct that the Court approved a broad construction of the term "appointing authority," in *Lyons.* Id. at 252. However, as indicated, the holding of this case was very narrow in that it dealt with who must be named in a notice of appeal. Id. at syllabus.

{¶28} The case cited by ODRC in support of the ALJ's determination of this issue, *Baker v. Dept. Rehab. & Corr.* (Dec. 27, 1999), 3d Dist. No. 1-99-76, is on point. In *Baker,* the Third District Court of Appeals held that an individual was not similarly situated under Ohio Adm.Code 124-9-11(A) where the alleged comparable employee was disciplined by a prior warden, reasoning: "the two disciplinary proceedings at issue were not conducted by the same appointing authority, a requirement that [ ] is necessary to establish disparate treatment." Id. at *12.

{¶29} Harper argues that this court should not follow *Baker* because: (1) it is in conflict with *Lyons* and "fundamental concepts of fairness;" (2) the portion of *Baker* regarding its interpretation of "appointing authority" is dicta; and (3) *Baker* was not decided by this district.

{¶30} However, *Baker* does not conflict with *Lyons*, as discusssed above. Nor does *Baker* conflict with fundamental concepts of fairness. Uniform discipline is undoubtedly important, but holding a current warden to the disciplinary decisions of all of his predecessors is unfair. Yet Harper's reading of Ohio Adm.Code 124-9-11(A) would seem to do just that.

{¶31} Further, we conclude that the *Baker* holding is not merely dicta. "'Dicta' is defined as '[e]xpressions in court's opinions which go beyond the facts before court and therefore are * * * not binding in subsequent cases as legal precedent.'" *State v.*

*DeSalvo*, 7th Dist. No. 06 MA 3, 2007-Ohio-1411, at ¶26 (internal citations omitted). Here the court in *Baker*, as quoted supra, clearly held that Ohio Adm.Code 124-9-11(A) requires the same warden discipline the compared employees. Id. Moreover, we often look outside of our district for guidance.

{¶32} Thus, we conclude that the interpretation of the term "same appointing authority" per Ohio Adm.Code 124-9-11(A) means the same warden made the disciplinary decision for each employee being compared for disparate treatment analysis. Accordingly, the ALJ committed no error by declining to admit Harper's proffered disparate treatment evidence. Harper's first assignment of error is meritless.

### Failure to Adopt the Recommendation of the ALJ

{¶33} Harper's second and third assignments of error both concern the SPBR's failure to adopt the ALJ's recommendation of a more lenient penalty. In his second assignment of error, Harper asserts:

{¶34} "The State Personnel Board of Review erred by failing to give due deference to the recommendation of its referee."

{¶35} Initially we note that the mere fact that SPBR modified the ALJ's recommendation does not constitute error. Ohio Adm.Code 124-15-03(A) expressly grants SPBR the authority to "modify, in whole or in part, any report and recommendation."

{¶36} Nonetheless, Harper contends that the SPBR should have given greater deference to the recommendation of the ALJ. He cites two cases in support of his position, but both are distinguishable. First, in *Brown,* 70 Ohio St.3d 1, supra, the Court did state that "[a]n administrative agency should accord due deference to the findings and recommendation of its referee, especially where there exist evidentiary conflicts, because it is the referee who is best able to observe the demeanor of the witnesses and weigh their credibility." *Brown* at *2, citing *Jones v. Franklin Cty. Sheriff* (1990), 52 Ohio St.3d 40, 43, 555 N.E.2d 940. In *Brown*, the SPBR modified the ALJ's penalty recommendation, and the common pleas court reversed and reinstated the ALJ's recommended penalty. The Supreme Court held that the common pleas court's decision

was proper because the SPBR failed to give proper deference to the recommendation of the ALJ. Id. However, *Brown* is factually distinguishable from the present case because in *Brown* the Court noted that the SPBR's modification was made without reviewing the record. Id. By contrast, in this case, the SPBR expressly noted it *did* review the record before deciding to modify the ALJ's recommendation.

{¶37} Harper concedes that the SPBR examined the record but argues that there was nothing in the record that contradicted the ALJ's findings that Harper had an excellent employment record with no prior discipline and that the warden admittedly failed to consider mitigating factors. This may be true, however, it was within the SPBR's authority to examine the whole record and decide that the seriousness of the infractions warranted removal. See Ohio Adm.Code 124-15-03(A). Notably, three out of the six infractions allowed for removal on the first offense.

{¶38} Harper also cites *Ross v. Cleveland Unit* (Mar. 7, 1985), 8th Dist. No. 48322. In *Ross,* the ALJ determined that the employee had committed only one of the infractions listed on the order of removal, i.e., record falsification, and recommended that the removal be modified to a thirty-day suspension. The SPBR adopted the ALJ's findings of fact, but concluded that the employee's actions nonetheless warranted removal. The common pleas court reversed the SPBR and reinstated the thirty-day suspension. The court of appeals affirmed the decision of the common pleas court, finding that there was no probative evidence to justify permanent removal of the employee. Id. at *2.

{¶39} Harper argues that *Ross* stands for the proposition that the SPBR must afford due deference to the findings of its referee. However, in *Ross*, the appellate court noted that there was uncontested testimony at the hearing that the conduct in question only warranted a thirty-day suspension. Namely, the supervisor who recommended disciplinary action testified that record falsification only justified a thirty day suspension. *Ross* at *2. For that reason, the Eighth District affirmed the common pleas court's decision that the SPBR's decision to remove the employee was not supported by reliable, probative and substantial evidence. Id. By contrast, in the instant case, it is uncontested

that three out of the six rules Harper violated allowed for removal on a first offense.

{¶40} In sum, the SPBR did not err in failing to give more deference to the decision of the ALJ. Ohio Adm.Code 124-15-03(A) allows the SPBR to modify, in whole or in part, any report and recommendation. The SPBR has broad powers of review, and may act independently of its administrative law judges. Harper's second assignment of error is meritless.

{¶41} In his third assignment of error, Harper asserts:

{¶42} "The decision of the State Personnel Board of Review ordering the removal of Appellant was not in accordance with law and had the effect of denying Appellant his right to due process of law because the State Personnel Board of Review failed to state the reasons for failing to adopt the recommendation of the Administrative Law Judge."

{¶43} In support of his argument, Harper cites R.C. 119.09, which states in pertinent part: "if the agency modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval." R.C. 119.09.

{¶44} The ODRC argues that where, as here, the SPBR references the Attorney General's objections to the ALJ's report and recommendation, the SPBR sufficiently states its reasons for disapproving the recommendation of the ALJ. The ODRC cites *Bd. of Edn. of Lordstown Local School Dist. v. Civil Rights Comm.* (1981), 66 Ohio St.2d 252, 20 O.O.3d 240, 421 N.E.2d 511, in support of this proposition. In *Lordstown,* the Supreme Court held:

{¶45} "Where the Ohio Civil Rights Commission disapproves its hearing examiner's recommendation and includes in the record of its proceedings the Attorney General's objections to the examiner's report, the commission sufficiently states its reasons for disapproval of the examiner's report in the record." Id. at paragraph three of the syllabus.

{¶46} The ODRC correctly notes that the Tenth District Court of Appeals has applied the holding of *Lordstown* to apply to administrative actions pursuant to R.C. 119.09. See *Jackson v. Franklin Cty. Animal Control Dept.* (Oct. 6, 1987), 10th Dist. No.

86AP-930, at *2. The ODRC contends that since the SPBR in this case referred to the ODRC's objections to the report and recommendation, that the Board sufficiently stated its reasons for departing from the ALJ's recommendation of a more lenient penalty.

{¶47} Harper counters that *Lordstown* has been "impliedly overruled" by the Ohio Supreme Court in *Graziano v. Bd. of Edn. of the Amherst Exempted Village School Dist.* (1987), 32 Ohio St.3d 289, 513 N.E.2d 282. We disagree. *Graziano* involved a situation where a school board rejected its referee's report and recommendation, both the factual conclusions about the teacher's conduct, and the determination that the teacher should not be terminated. The Supreme Court, after noting that the following issue was "not absolutely essential to [the Court's] ultimate holding," stated: "where a board of education determines to reject the recommendation given by the referee, the school board should, in the spirit of due process, articulate its reasons therefor." Id. at 293.

{¶48} Notably, in *Graziano* there is no mention of objections being filed to the referee's decision. Conversely, the *Lordstown* opinion centered on the fact that there were objections filed to the examiner's report and recommendation, and that the commission specifically referenced those objections in its decision. As such, we cannot conclude that *Graziano* impliedly overruled *Lordstown*.

{¶49} Moreover, the plain language of R.C. 119.09 supports the ODRC's position. As indicated, the statute states that if the SPBR disagrees with the ALJ's recommendation "it shall include *in the record of its proceedings* the reasons for such modification or disapproval." Since the objections filed by the ODRC were part of the record before the SPBR, and contained reasoning that supported the modification, namely that the charges were severe and that several of them provide for removal for a first-time violation, the SPBR complied with R.C. 119.09. Accordingly, Harper's third assignment of error is meritless.

Substantive Ruling on the Order of Removal

{¶50} In his fourth assignment of error, Harper asserts:

{¶51} "The finding of the administrative agency had proved the allegations contained in the notice of removal by the preponderance of the evidence was not

supported by reliable, probative, and substantial evidence and was contrary to law."

{¶52} As indicated, supra, we will review the trial court's decision for an abuse of discretion. Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. We will discuss the trial court's ruling on each individual infraction in turn.

{¶53} First, the trial court did not abuse its discretion by affirming the SPBR's determination that Harper violated Rule 5D. This Rule prohibits purposeful or careless acts which result in an unsafe act. Deputy Warden Remmick testified that Harper violated Rule 5D by using the same team for both extractions. Although Harper correctly notes that there is no written policy prohibiting a corrections lieutenant from using the same extraction team for a subsequent extraction, there was substantial evidence presented that Harper's decision to use the same team for both extractions amounted to poor judgment based upon the totality of the circumstances in this case. It is undisputed that inmate Johnson was yelling and taunting the extraction team while in the strip cage. Deputy Warden Remmick testified that in light of inmate Johnson's conduct in the strip cage it constituted poor judgment for Harper to have used the same team for the second extraction. Remmick further stated that Harper would have had enough time to assemble a new team, had he chose to do so. Warden Houk likewise testified that Harper's use of the same team was "extremely inappropriate" in light of the fact that inmate Johnson was yelling and "spouting off" while in the strip cage after the first extraction. Even Officer Ellis, the videographer who denied that excessive force was used, testified that the use of the same team was unusual.

{¶54} Second, the trial court did not abuse its discretion affirming the SPBR's determination that Harper violated Rule 7. Rule 7 concerns a failure to follow post orders, administrative regulations, policies or directives. According to Deputy Warden Remmick, Harper violated this rule by failing to stop the excessive use of force and failing to report it. He further noted that even after watching the video Harper failed to amend his version of events, which was also a violation of Rule 7.

{¶55} Harper's argument that he did not violate Rule 7 is largely based upon his contention that his team did not use excessive force. However, there is substantial evidence that the team did use excessive force. The video reveals that as the inmate was carried to the strip cage by four corrections officers, his hands and feet shackled behind him, Officer Shimko kicked him two times. Although view of the impact between the officer's foot and the inmate's body is blocked by the other officers, it is clear that Officer Shimko kicked the inmate. Officer Shimko's leg makes several swinging motions towards the inmate's body, and the impact of his foot can be heard on the tape. Notably, the inmate was not overly struggling at that time. Further, although there was testimony that kicks may be permitted under some circumstances, Deputy Warden Remmick, Warden Houk, and Captain Thomas testified that the kicks were inappropriate under the circumstances and constituted excessive force. It is also clear from the video and the testimony that the "launching" of the inmate into the strip cage constituted excessive force. The trial court accurately stated that the officers "threw [the inmate] into his cell as if he were a sack of potatoes."

{¶56} With regard to the shower extraction, there is substantial evidence that excessive force was used. During this extraction, three of the officers entered the shower cell and essentially piled on top of the inmate in order to prevent his movement and to put cuffs on him. As this occurred, Officer Heynard can be seen stomping on the inmate several times. Although actual contact between Officer Heynard's foot and the inmate's body is outside of the camera's view, it is clear that Officer Heynard stomped on the inmate as the stomps corresponded with cries of "no pain!" by the inmate. Notably, the tape shows Harper watching Officer Heynard's behavior, from less than four feet away. Finally, there is substantial evidence that the team rammed the inmate's head into the cell door repeatedly. This occurred as the four corrections officers carried the inmate, again with his hands and legs shackled behind him, from the shower cell to a holding cell. Although, the video does not show the inmate's head make contact with the door, as this was out of the camera's view, it is clear that is what occurred. The tape shows the team swinging the inmate's body, head-first, into the steel door, and the sound of impact can

be heard on tape. This is also consistent with the testimony of Deputy Warden Remmick, Warden Houk, and Captain Brown regarding their perception of events.

{¶57} Harper makes much of the fact that none of the officers who took part in the extraction felt that excessive force was used. However, Warden Houk testified that it is not uncommon for officers to fail to report excessive force for fear of the consequences. And in fact, all of the officers involved in the extractions in this case received some discipline for their conduct. Harper also stands by his testimony that he believed the amount of force used was appropriate under the circumstances. However, the ALJ, as fact-finder determined that Harper's testimony was "disingenuous at best." In sum, the trial court reasonably affirmed the SPBR's determination that Harper violated Rule 7.

{¶58} Third, the trial court did not abuse its discretion by affirming the SPBR's determination that Harper violated Rule 24. This Rule prohibits the interfering with, failing to cooperate in, or lying in an official investigation or inquiry. Harper does not dispute that he failed to report any excessive use of force in his reports of either extraction. He claims he entirely cooperated in the investigations and argues that he had a good faith belief that excessive force was not used. However, as indicated, there was substantial evidence that excessive force was used during the extractions. Moreover, there was testimony that even if the actions by Harper's team were accidental, or a result of proper unarmed self-defense techniques, those things still should have been noted in Harper's report. Further, even after he was confronted with the video by his supervisor who expressed his concerns about it, Harper still refused to amend his report.

{¶59} Fourth, the trial court did not abuse its discretion by affirming the SPBR's determination that Harper violated Rule 25. This Rule concerns the failure to immediately report a violation of any work rule, law or regulation. It is undisputed that none of the corrections officers involved, nor Harper, reported any excessive use of force in their written incident reports.

{¶60} Fifth, the trial court did not abuse its discretion by affirming the SPBR's determination that Harper violated Rule 27. This Rule concerns the failure of a supervisor to properly supervise or enforce work rules. Deputy Warden Remmick testified that

Harper failed to properly supervise by failing to notice Officer Shimko's kicks, and the inmate's head hitting the cell door. Warden Houk testified that Harper was "extremely negligent" in his supervision of the incident. Captain Thomas testified that Harper should have called him right away to notify him about Officer Shimko's kicks and the way the officers threw the inmate in the strip cage.

{¶61} Finally, the trial court did not abuse its discretion by affirming the SPBR's determination that Harper violated Rule 49, which prohibits any violation of R.C. 124.34 including dishonesty, neglect of duty, or failure of good behavior. There was substantial evidence presented that Harper was experienced and understood the department rules and regulations, but yet failed to properly supervise his team, stop the excessive use of force, and report the excessive force as required.

{¶62} Thus, we conclude that the trial court's decision with regard to all the allegations in the order of removal was proper. Accordingly, Harper's fourth assignment of error is also meritless.

## Conclusion

{¶63} All of Harper's assignments of error are meritless. The ALJ properly excluded Harper's disparate treatment evidence since the alleged comparables were disciplined by prior wardens, not by Warden Houk. The SPBR has broad authority to modify, in whole or in part, any report and recommendation, and therefore committed no error by failing to defer to the recommendation of the ALJ. Further, the SPBR sufficiently stated its reasons for departing from the ALJ's recommendation by referring to ODRC's objections. Finally, the trial court's decision to affirm the order of removal was not an abuse of discretion. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.
Waite, J., concurs.